1   MAYER BROWN LLP
    DALE J. GIALI (SBN 150382)
2   dgiali@mayerbrown.com
    350 South Grand Avenue, 25th Floor
3   Los Angeles, CA 90071-1503
    Telephone:   (213) 229-9500
4   Facsimile:     (213) 625-0248

5   KFIR B. LEVY (SBN 235372)
    klevy@mayerbrown.com
6   1999 K Street, NW
    Washington, DC 20006
7   Telephone: (202) 263-3000
    Facsimile: (202) 263-3300

8
    Attorneys for Plaintiffs Maxell, Ltd. and Maxell
9   Holdings, Ltd.

10                **UNITED STATES DISTRICT COURT**

11               **CENTRAL DISTRICT OF CALIFORNIA**

12

13

14  MAXELL, LTD. AND MAXELL          CASE NO. 2:21-cv-6758
    HOLDINGS, LTD.,
15                                    **COMPLAINT AND DEMAND**
                  Plaintiffs,         **FOR JURY TRIAL**
16
         v.                           Judge:
17
    VIZIO, INC.
18
                  Defendant.
19

20

21

22

23

24

25

26

27

28

Plaintiffs Maxell, Ltd. and Maxell Holdings, Ltd. (collectively "Maxell"), by and through their undersigned counsel, file this complaint under 35 U.S.C. § 271 for Patent Infringement against Defendant VIZIO, Inc. ("VIZIO" or "Defendant") and further alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.      This is an action for patent infringement by Maxell.  Founded in 1961 as Maxell Electric Industrial Co., Ltd., Maxell is a leading global manufacturer of information storage media products, including magnetic tapes, optical discs, and battery products such as lithium ion rechargeable micro batteries and alkaline dry batteries, and the company has over 50 years of experience producing industry-leading recordable media and energy products for both the consumer and the professional markets. Maxell is also a leading manufacturer of projectors and lenses and additionally sells various other devices, such as Bluetooth headsets, wireless charging solutions, etc.

2.      Maxell has built up an international reputation for excellence and reliability, for pioneering the power supplies and digital recording for today's mobile and multi-media devices, and leading the electronics industry in the fields of storage media and batteries.

3.      Since being one of the first companies to develop alkaline batteries and Blu-ray camcorder discs, Maxell has always assured its customers of industry leading product innovation and is one of the world's foremost suppliers of memory, power, audio, and visual goods.

4.      As more fully described below, in 2009 Hitachi, Ltd. assigned much of its intellectual property to Hitachi Consumer Electronics Co., Ltd., along with a significant portion of its Consumer Business Group, including manufacturing and research and development capabilities of video equipment such as TVs and projectors. Then, in 2013, Hitachi Consumer Electronics Co., Ltd. assigned the intellectual

property, including some of the patents in this case, to Hitachi Maxell, Ltd., which later assigned the patents to Maxell as a result of a reorganization and name change. This was an effort to align its intellectual property with the licensing, business development, and research and development efforts of Maxell, including in the consumer electronics, mobile and mobile-media device market. Maxell continues to sell products in the consumer electronics and mobile device market including wireless charging solutions, wireless flash drives, multimedia players, storage devices, and headphones. Maxell also maintains intellectual property related to televisions, computer products, tablets, digital cameras, and mobile phones. As a technology developer and industry leader, and due to its historical and continuous investment in research and development, Maxell owns a portfolio of patents related to such technologies and actively enforces its patents through licensing and, where needed, litigation. Maxell is forced to bring this action against VIZIO as a result of VIZIO's knowing and ongoing infringement of Maxell's patents as further described herein.

5.     Vizio has been aware of Maxell's portfolio—and the value of the patents—since at least April 2013, when Vizio entered into a patent licensing agreement with Hitachi Consumer Electronics Co., Ltd. Additionally, Vizio is aware that at least two of its suppliers have entered into license agreements covering Maxell's portfolio. One of those suppliers licensed the right to use Maxell's patents in TV products supplied to Vizio from as early as 2011, with the other supplier entering into a license agreement with Maxell in 2016. Vizio is further aware that its license agreement has expired, as has the agreement with the first supplier, thereby leaving the majority of its TV products unlicensed.

6.     Additionally, VIZIO has been specifically aware of its infringement of certain of the asserted patents since at least 2018, through correspondence and interactions with Maxell's licensing agent, which discussed VIZIO's infringement of those patents. The correspondence included VIZIO's representatives being provided

with detailed information regarding Maxell's patents, the developed technology, and VIZIO's ongoing use of this patented technology. Through this process, VIZIO's representatives requested and received detailed explanations regarding Maxell's patents and allegations. Maxell believed that the parties could reach a mutually beneficial solution and to that end Maxell's licensing agent considered a potential business transaction and answered multiple inquiries from VIZIO, including sending VIZIO claim charts in March 2018.

7.      With that process stalled, Maxell again provided VIZIO with notice of its infringement of Maxell patents on November 8, 2019, including identifying additional specific patents Maxell believed VIZIO was infringing. Again on July 13, 2021 Maxell provided VIZIO with notice of yet more Maxell patents that Maxell believed VIZIO was infringing.

8.      Throughout this period, Vizio and Maxell exchanged additional correspondence and information, including exemplary claim charts and proposed licensing terms. Vizio is and has been aware of the value of Maxell's patents through the prior license agreements with Vizio and its suppliers, and has been confirmed through more recent license agreements, including with Vizio's competitors. Yet VIZIO elected not to enter into an agreement and has not licensed Maxell's patents. Instead, VIZIO continued, and continues today, to make, use, sell and offer for sale Maxell's patented technology without license.

## THE PARTIES

9.      Plaintiff Maxell, Ltd. is a Japanese corporation with a registered place of business at 1 Koizumi, Oyamazaki, Oyamazaki-cho, Otokuni-gun, Kyoto, Japan.

10.      Plaintiff Maxell Holdings, Ltd. is the parent company of Maxell, Ltd. and is a Japanese corporation with a registered place of business at 1 Koizumi, Oyamazaki, Oyamazaki-cho, Otokuni-gun, Kyoto, Japan.

11.      On information and belief, Defendant VIZIO, Inc. is a California company with a principal place of business located at 39 Tesla, Irvine, CA 92628.

3

1

**NATURE OF THE ACTION**

2        12.     This is a civil action for patent infringement arising under the patent

3    laws of the United States, 35 U.S.C. §§ 1 *et seq*.

4        13.     VIZIO has infringed and continues to infringe, contributed to and

5    continues to contribute to the infringement of, and/or actively induced and

6    continues to induce others to infringe Maxell's U.S. Patent Nos. 10,339,893 (the

7    "'893 Patent"); 9,578,369 (the "'369 Patent"); 10,321,206 (the "'206 Patent");

8    7,986,858 (the "'858 Patent"); 8,107,007 (the "'007 Patent"); 7,730,507 (the "'507

9    Patent"); and 7,760,213 (the "'213 Patent")  (collectively, "the Asserted Patents").

10        14.     Maxell is the legal owner by assignment of the Asserted Patents,

11    which were duly and legally issued by the United States Patent and Trademark

12    Office.

13        15.     Maxell seeks injunctive relief and monetary damages.

14

**JURISDICTION AND VENUE**

15        16.     Maxell brings this action for patent infringement under the patent laws

16    of the United States, 35 U.S.C. § 271 *et seq*.

17        17.     This Court has subject matter jurisdiction over the subject matter of

18    this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises

19    under the patent laws of the United States.

20        18.     The Court has personal jurisdiction over VIZIO because (1) Maxell's

21    claims arise in whole or in part from VIZIO's conduct in California and (2) VIZIO

22    is subject to personal jurisdiction under the provisions of the California Long Arm

23    Statute, Cal. Code. Civ. Proc. § 410.10, by virtue of the fact that, upon information

24    and belief, VIZIO has availed itself of the privilege of conducting and soliciting

25    business within this State, including engaging in at least some of the infringing acts

26    alleged herein through the sales and marketing of infringing products in this State.

27    The allegations and claims set forth in this action arise out of VIZIO's infringing

28    activities in this State, as well as by others acting as VIZIO's agents and/or

4

representatives, such that it would be reasonable for this Court to exercise jurisdiction consistent with the principles underlying the U.S. Constitution, and would not offend traditional notions of fair play and substantial justice.

19.     Upon further information and belief, VIZIO has also established minimum contacts with this District and regularly transacts and does business within this District, including advertising, promoting and selling products over the internet, through intermediaries, representatives and/or agents located within this District, that infringe Maxell's patents, which products are then marketed to, sold to, and accessed by citizens residing within this State and this District. Upon further information and belief, VIZIO has purposefully directed activities at citizens of this State and located within this District.

20.     On information and belief, VIZIO has purposefully and voluntarily placed its products into the stream of commerce with the expectation that they will be purchased and used by customers located in the State of California and the Central District of California. On information and belief, VIZIO's customers in the Central District of California have purchased and used and continue to purchase and use VIZIO's products.

21.     Venue in the Central District of California is proper pursuant to 28 U.S.C. §§ 1391 and 1400 because VIZIO, Inc. resides in this District.

**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 10,339,893**

22.     Maxell incorporates paragraphs 1-21 above by reference.

23.     U.S. Patent No. 10,339,893 (the "'893 Patent," attached hereto at Exhibit 1) duly issued on July 2, 2019 and is entitled *Display Apparatus*.

24.     Maxell is the owner by assignment of the '893 Patent and possesses all rights under the '893 Patent, including the exclusive right to recover for past and future infringement.

25.     Defendant has directly infringed one or more claims of the '893 Patent in this judicial district and elsewhere in California, including at least claims 1, 2, 4,

5

5, 6, 7, 9, 10, 11, 12, 14, 15, 16, 17, 19 and 20 literally and/or under the doctrine of equivalents, by or through making, using, importing, offering for sale and/or selling their televisions, including by way of example a product known as the M557-G0.

26.     The M557-G0 is a smart television that can display images from various sources, including broadcasted television content, and externally connected sources. This is shown in the screenshots below from the M557-G0.



27.     The M557-G0 has HDMI and USB ports for receiving and processing image information for display on the display of the television. The M557-G0 is equipped with a USB port, allowing it to display, for example, compressed images stored on an external image apparatus (e.g., camcorder). The M557-G0 includes a central processor or comparable hardware or software that decodes compressed image information (e.g., JPEG, PNG, and GIF) received by the USB port from, for example, a camcorder. The M557-G0 is equipped with an HDMI port, allowing it to display uncompressed images retrieved from, for example, a satellite receiver, a computer, a digital camera or a camcorder. This is shown in the screenshots below from the M557-G0.

1
2
3
4
5
6
7
8
9



10      28.     The processor in the M557-G0 has a selector that selects displaying the

11  images on the display in response to a user operation on an input device. For

12  example, the M557-G0 has multiple types of inputs (e.g., HDMI, USB, and AV)

13  and responds to user operations (e.g., the selection of "input" source) on an input

14  device (e.g., a remote controller).

15
16
17
18
19



20

21      29.     The M557-G0 also includes the functionality of displaying a slide

22  show of images received from the USB and HDMI ports. For example, when a

23  camcorder containing JPEG images is connected to the USB port of the M557-G0

24  and a user selects the USB port as the input source, in response to an operation by

25  the user for conducting a slide show (e.g., selection of slide show functionality) via

26  a remote controller, the M557-G0 transmits a signal to the camcorder via the USB

27  port causing it to output compressed image information corresponding to still

28  pictures, receives the compressed image information output from the camcorder via

1    the USB port, decodes the received compressed image information by the central

2    processor or comparable hardware or software, and conducts a slide show at

3    predetermined time intervals. This is shown in the screenshots below from the

4    M557-G0.





8







30.    In addition, for example, when a camcorder containing JPEG images is connected to the HDMI port of the M557-G0 and a user selects the HDMI port as

9

1   the input source, in response to an operation by the user for conducting a slide show
2   via a remote controller, the M557-G0 transmits a signal to the camcorder via the
3   HDMI port causing it to decode the JPEG images and output uncompressed images,
4   receives the uncompressed images from the camcorder via the HDMI port, and
5   conducts a slide show at predetermined time intervals. This is shown in the
6   screenshots below from the M557-G0.

7
8
9
10
11
12




13
14
15
16
17
18
19
20
21
22
23
24



25
26
27
28

1
2
3
4
5
6
7
8
9



10
11
12
13
14
15
16
17
18



19      31.    The foregoing features and capabilities of the M557-G0, and

20  Defendant's description and/or demonstration thereof, including in user manuals

21  and advertising, reflect Defendant's direct infringement by satisfying every element

22  of at least claims 1, 2, 4, 5, 6, 7, 9, 10, 11, 12, 14, 15, 16, 17, 19, and 20 of the '893

23  Patent, under 35 U.S.C. § 271(a).

24      32.    On information and belief, Defendant further infringes the '893 Patent

25  through additional products utilizing the same or reasonably similar functionalities

26  as described above with respect to the M557-G0 (collectively, "the '893 Accused

27  Products"). The '893 Accused Products include, by way of examples, Vizio's M-

28  Series Quantum televisions including at least the  M65Q6-J09,  M706x-H3, and

11

M70Q6-J03; M-Series televisions including at least the M506x-H9, M80-D3, M70-D3, M65-D0, M60-C3, and M55-D0; V-Series televisions including at least the V505-J09, V705-J03, V755-H4, V755-J04; E-Series televisions including at least the E70u-D3, E65u-D3, E60u-D3, E55-C2, E55u-D0, E55u-D2, E55-D0, E50u-D2, E48u-D0, E48-D0, E43u-D2, E43-D2, and E40-D0; and the D-Series televisions including at least the D32h-J09, D40f-J09, D43f-J04, D70-D3, D65u-D2, D65-D2, D60-D3, D48-D0, D43-D2, D39h-D0, D39hn-D0, and D32hn-D0. These additional products each include all necessary hardware and operating systems and work as described above with respect to the M557-G0. Maxell reserves the right to discover and pursue any additional infringing devices that incorporate infringing functionalities. For the avoidance of doubt, the '893 Accused Products are identified to describe the Defendant's infringement and in no way limit the discovery and infringement allegations against Defendant concerning other devices that incorporate the same or reasonably similar functionalities.

33.     Defendant has indirectly infringed at least claims 1, 2, 4, 5, 6, 7, 9, 10, 11, 12, 14, 15, 16, 17, 19, and 20 of the '893 Patent in this judicial district and elsewhere in the United States by, among other things, actively inducing the use, offering for sale, selling, or importation of at least the '893 Accused Products. Defendant's customers who purchase devices and components thereof and operate such devices and components in accordance with Defendant's instructions directly infringe one or more claims of the '893 Patent in violation of 35 U.S.C. § 271. Defendant instructs its customers through at least user guides, such as those for the M557-G0 located at the following website: https://cdn.vizio.com/user-manual/PDF/2019/TV/UM/M557-G0_M657-G0_UM-ENG.pdf. Defendant is thereby liable for infringement of the '893 Patent pursuant to 35 U.S.C. § 271(b).

34.     Defendant has indirectly infringed least claims 1, 2, 4, 5, 6, 7, 9, 10, 11, 12, 14, 15, 16, 17, 19, and 20 of the '893 Patent, by, among other things, contributing to the direct infringement of others, including customers of the '893

12

Accused Products by making, offering to sell, or selling, in the United States, or importing a component of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of the '893 Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

35. For example, the '893 Accused Products include an HDMI port and USB port for receiving images from an external image apparatus such as a digital camera or camcorder for conducting a slide show at predetermined time intervals. These are components of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patented process. Furthermore, such components are a material part of the invention and upon information and belief are not a staple article or commodity of commerce suitable for substantial non-infringing use. Thus, Defendant is liable for infringement of the '893 Patent pursuant to 35 U.S.C. § 271(c).

36. Defendant has been on notice of the '893 Patent since at least November 8, 2019. By the time of trial, Defendant will thus have known and intended (since receiving such notice), that its continued actions would actively induce and contribute to actual infringement of at least claims 1, 2, 4, 5, 6, 7, 9, 10, 11, 12, 14, 15, 16, 17 19, and 20 of the '893 Patent.

37. Defendant undertook and continues their infringing actions despite an objectively high likelihood that such activities infringed the '893 Patent, which has been duly issued by the USPTO, and is presumed valid. For example, since at least November 8, 2019, Defendant has been aware of an objectively high likelihood that its actions constituted and continue to constitute infringement of the '893 Patent, and that the '893 Patent is valid. On information and belief, Defendant could not reasonably, subjectively believe that its actions do not constitute infringement of the '893 Patent, nor could they reasonably, subjectively believe that the patent is

13

invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, and based on Defendant's knowledge of the strength and value of Maxell's portfolio due to the prior licensing and negotiation history set forth in this complaint, Defendant willfully infringes the '893 Patent.

38.     Maxell has been damaged by Defendant's infringement of the '893 Patent.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 9,578,369

39.     Maxell incorporates paragraphs 1-38 above by reference.

40.     U.S. Patent No. 9, 578,369 (the "'369 Patent," attached hereto at Exhibit 2) duly issued on February 21, 2017 and is entitled *Portable Terminal, Information Processing Apparatus, Content Display System and Content Display Method.*

41.     Maxell is the owner by assignment of the '369 Patent and possesses all rights under the '369 Patent, including the exclusive right to recover for past and future infringement.

42.     Defendant has directly infringed one or more claims of the '369 Patent in this judicial district and elsewhere in California, including at least claims 1, 2, 10, and 11 literally and/or under the doctrine of equivalents, by or through making, using, importing, offering for sale and/or selling their televisions, including by way of example a product known as the M557-G0.

43.     The M557-G0 is a television with a display, which can connect to a wireless network to access the internet through its wireless adapter and can receive content through its applications. It can also display broadcast television. The photograph below shows the M557-G0 displaying broadcast television.

1
2
3
4
5
6
7
8
9



10    44.    The M557-G0 is equipped with a network interface allowing it to
11 communicate with other devices on the same network, such as WiFi enabled mobile
12 terminals such as smartphones. The M557-G0 has a controller for controlling the
13 display unit to display video content, for example, broadcast television. The
14 controller can also terminate displaying the broadcast television and start displaying
15 content acquired from the internet when a communication is conducted between a
16 mobile terminal playing the internet content and the M557-G0. This is shown in the
17 screenshots below from the M557-G0.

18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8



9
10
11
12
13
14
15
16
17



18
19
20
21
22
23
24
25



26   45.    The internet content displayed on the M557-G0 can also be controlled

27   by the mobile terminal (e.g., pause command). The M557-G0 can also be controlled

28   by the mobile terminal to terminate displaying the video content. This is shown in

16

the screenshots below from the M557-G0.






46.     The foregoing features and capabilities of the M557-G0, and Defendant's description and/or demonstration thereof, including in user manuals and advertising, reflect Defendant's direct infringement by satisfying every element of at least claims 1, 2, 10, and 11 of the '369 Patent, under 35 U.S.C. § 271(a).

47.     On information and belief, Defendant further infringes the '369 Patent through additional products utilizing the same or reasonably similar functionalities as described above with respect to the M557-G0 (collectively, "the '369 Accused Products"). The '369 Accused Products include, by way of examples Vizio's M-Series Quantum televisions including at least the  M65Q6-J09,  M706x-H3, and M70Q6-J03; M-Series televisions including at least the M506x-H9, M80-D3, M70-

17

D3, M65-D0, M60-C3, and M55-D0; V-Series televisions including at least the V505-J09, V705-J03, V755-H4, V755-J04; E-Series televisions including at least the E70u-D3, E65u-D3, E60u-D3, E55-C2, E55u-D0, E55u-D2, E55-D0, E50u-D2, E48u-D0, E48-D0, E43u-D2, E43-D2, and E40-D0; and D-Series televisions including at least the D32h-J09, D40f-J09, D43f-J04, D70-D3, D65u-D2, D65-D2, D60-D3,  D48-D0, D43-D2, D39h-D0, D39hn-D0, and D32hn-D0.  These additional products each include all necessary hardware and operating systems and work as described above with respect to the M557-G0. Maxell reserves the right to discover and pursue any additional infringing devices that incorporate infringing functionalities. For the avoidance of doubt, the '369 Accused Products are identified to describe the Defendant's infringement and in no way limit the discovery and infringement allegations against Defendant concerning other devices that incorporate the same or reasonably similar functionalities.

48.     Defendant has indirectly infringed at least claims 1, 2, 10, and 11 of the '369 Patent in this judicial district and elsewhere in the United States by, among other things, actively inducing the use, offering for sale, selling, or importation of at least the '369 Accused Products. Defendant's customers who purchase devices and components thereof and operate such devices and components in accordance with Defendant's instructions directly infringe one or more claims of the '369 Patent in violation of 35 U.S.C. § 271. Defendant instructs its customers through at least user guides, such as those for the M557-G0 located at the following website: https://cdn.vizio.com/user-manual/PDF/2019/TV/UM/M557-G0_M657-G0_UM-ENG.pdf. Defendant is thereby liable for infringement of the '369 Patent pursuant to 35 U.S.C. § 271(b).

49.     Defendant has indirectly infringed at least claims 1, 2, 10, and 11 of the '369 Patent, by, among other things, contributing to the direct infringement of others, including customers of the '369 Accused Products by making, offering to sell, or selling, in the United States, or importing a component of a patented

18

machine, manufacture, or combination, or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of the '369 Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

50.     For example, the '369 Accused Products include a processor with software for conducting communication with a mobile terminal to cast the video content from the mobile terminal to the accused product. These are components of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patented process. Furthermore, such components are a material part of the invention and upon information and belief are not staple articles or commodities of commerce suitable for substantial non-infringing use. Thus, Defendant is liable for infringement of the '369 Patent pursuant to 35 U.S.C. § 271(c).

51.     Defendant has been on notice of the '369 Patent since at least March 2018. By the time of trial, Defendant will thus have known and intended (since receiving such notice), that its continued actions would actively induce and contribute to actual infringement of at least claims 1, 2, 10, and 11 of the '369 Patent.

52.     Defendant undertook and continued its infringing actions despite an objectively high likelihood that such activities infringed the '369 Patent, which has been duly issued by the USPTO, and is presumed valid. For example, since at least March 2018, Defendant has been aware of an objectively high likelihood that its actions constituted and continue to constitute infringement of the '369 Patent, and that the '369 Patent is valid. On information and belief, Defendant could not reasonably, subjectively believe that its actions do not constitute infringement of the '369 Patent, nor could they reasonably, subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its

19

infringing activities. As such, and based on Defendant's knowledge of the strength and value of Maxell's portfolio due to the prior licensing and negotiation history set forth in this complaint, Defendant willfully infringes the '369 Patent.

53. Maxell has been damaged by Defendant's infringement of the '369 Patent.

### COUNT III – INFRINGEMENT OF U.S. PATENT NO. 10,321,206

54. Maxell incorporates paragraphs 1-53 above by reference.

55. U.S. Patent No. 10,321,206 (the "'206 Patent," attached hereto as Exhibit 3) duly issued on June 11, 2019, and is entitled *Method for Switching an Audio/Video Application, Apparatus And Smart TV.*

56. Maxell is the owner by assignment of the '206 Patent and possesses all rights of recovery under the '206 Patent, including the exclusive right to recover for past and future infringement.

57. Defendant has directly infringed one or more claims of the '206 Patent in this judicial district and elsewhere in California, including at least claims 1-5, 8-13, and 16-17 literally and/or under the doctrine of equivalents, by or through making, using, importing, offering for sale and/or selling their televisions, including by way of example the products known as the M65Q8-H1.

58. The M65Q8-H1 has several video apps (e.g., Live TV, WatchFree, Vudu, Netflix, Prime Video, Disney+, Xumo, Hulu, and Redbox) that can, for example, be started by instructions received from its remote control.



1       59.    When a button for the app or input is pressed on the remote control,

2  the video apps can be switched between one another and an intermediate interface

3  (e.g., a loading screen) is shown until the target video app is loaded. This is shown

4  in the screenshots below from the M65Q8-H1.





and







60.     The foregoing features and capabilities of the M65Q8-H1, and Defendant's description and/or demonstration thereof, including in user manuals and advertising, reflect Defendant's direct infringement by satisfying every element of at least claims 1-5, 8-13, and 16-17 of the '206 Patent, under 35 U.S.C. § 271(a).

61.     On information and belief, Defendant further infringes the '206 Patent through additional products utilizing the same or reasonably similar functionalities as described above with respect to the M65Q8-H1 (collectively, "the '206 Accused Products"). The '206 Accused Products include, by way of examples, Vizio's P-Series Quantum X televisions including at least the P65QX-H1, P75QX-H1, and P85QX-H1; P-Series Quantum televisions including at least the P65Q9-H1 and P75Q9-H1; M-Series Quantum televisions including at least the M55Q7-H1, M50Q6-J01, M586x-H1, M55Q6-J01, M65Q6-J09, M65Q7-H1, M65Q8-H1, M55Q7-J01, M706x-H3, and M70Q6-J03; M-Series televisions including at least the M557-G0, and M506x-H9; V-Series televisions including at least the V435-J01, V505-J09, V555-J01, V655-J09, V705-J03, V755-H4, and V755-J04; D-Series televisions including at least the D32h-J09, D40f-J09, and D43f-J04; and OLED televisions including the OLED55-H1 and OLED65-H1. These additional products each include all necessary hardware and operating systems and work as described above with respect to the M65Q8-H1. Maxell reserves the right to discover and pursue any additional infringing devices that incorporate infringing functionalities. For the avoidance of doubt, the '206 Accused Products are identified to describe the Defendant's infringement and in no way limit the discovery and infringement

22

allegations against Defendant concerning other devices that incorporate the same or reasonably similar functionalities.

62.     Defendant has indirectly infringed at least claims 1-5, 8-13, and 16-17 of the '206 Patent in this judicial district and elsewhere in the United States by, among other things, actively inducing the use, offering for sale, selling, or importation of at least the '206 Accused Products. Defendant's customers who purchase devices and components thereof and operate such devices and components in accordance with Defendant's instructions directly infringe one or more claims of the '206 Patent in violation of 35 U.S.C. § 271. Defendant instructs its customers through at least user guides, such as those for the M65Q8-H1 located at the following website: https://www.vizio.com/content/dam/vizio/us/en/images/product/2020/tvs/m-series/m55q8-h1/2020_M8-Series_M55Q8-H1_UM-ENG.pdf. Defendant is thereby liable for infringement of the '206 Patent pursuant to 35 U.S.C. § 271(b).

63.     Defendant has indirectly infringed at least claims 1-5, 8-13, and 16-17 of the '206 Patent, by, among other things, contributing to the direct infringement of others, including customers of the '206 Accused Products by making, offering to sell, or selling, in the United States, or importing a component of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of the '206 Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

64.     For example, the '206 Accused Products include processor hardware and/or software that is configured to load an intermediate interface and trigger the release of its Audio/Video (AV) decoder hardware and/or software from the current AV application to a new target AV application when switching AV applications. These are components of a patented machine, manufacture, or combination, or an

23

apparatus for use in practicing a patented process. Furthermore, such components are a material part of the invention and upon information and belief are not a staple article or commodity of commerce suitable for substantial non-infringing use. Thus, Defendant is liable for infringement of the '206 Patent pursuant to 35 U.S.C. § 271(c).

65.     Defendant has been on notice of the '206 Patent since at least July 13, 2021. By the time of trial, Defendant will thus have known and intended (since receiving such notice), that its continued actions would actively induce and contribute to actual infringement of at least claims 1-5, 8-13, and 16-17 of the '206 Patent.

66.     Defendant undertook and continued its infringing actions despite an objectively high likelihood that such activities infringed the '206 Patent, which has been duly issued by the USPTO, and is presumed valid. For example, since at least July 13, 2021, Defendant has been aware of an objectively high likelihood that its actions constituted and continue to constitute infringement of the '206 Patent, and that the '206 Patent is valid. On information and belief, Defendant could not reasonably, subjectively believe that its actions do not constitute infringement of the '206 Patent, nor could they reasonably, subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, and based on Defendant's knowledge of the strength and value of Maxell's portfolio due to the prior licensing and negotiation history set forth in this complaint, Defendant willfully infringes the '206 Patent.

67.     Maxell has been damaged by Defendant's infringement of the '206 Patent.

### COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 7,986,858

68.     Maxell incorporates paragraphs 1-67 above by reference.

69.     U.S. Patent No. 7,986,858 (the "'858 Patent," attached hereto at

24

Exhibit 4) duly issued on July 26, 2011 and is entitled *Imaging Processing Apparatus and Image Processing Method*.

70.     Maxell is the owner by assignment of the '858 Patent and possesses all rights of recovery under the '858 Patent, including the exclusive right to recover for past and future infringement.

71.     Defendant has directly infringed one or more claims of the '858 Patent in this judicial district and elsewhere in California, including at least claim 1 literally and/or under the doctrine of equivalents, by or through making, using, importing, offering for sale and/or selling their televisions, including by way of example a product known as the M65Q8-H1.

72.     The M65Q8-H1 is a television that includes a Spatial Scaling UHD Upscale Engine that enlarges images (e.g., from high-definition resolution to 4K resolution) by using the pixels of a reference frame of a video image (e.g., television broadcasts, movies, and videos), and calculating luminance data for a high resolution video image (e.g., 4K) by interpolating supplementary luminance data.

## Key Specs

| | |
|---|---|
| Class Size | 65" |
| Screen Size (Diag) | 64.50" (1638.30mm) |
| Backlight Type | Full Array LED |
| Resolution | 3840 x 2160 |
| UHD Upscale Engine | Spatial Scaling Engine |
| UHD Codec Support | VP9 and HEVC (H.265) |

25



73.    The upscaling engine in the M65Q8-H1 performs this upscaling function by setting target pixels in at least one of the frames in the video image to calculate corresponding positions to the target pixels in the reference frame with decimal accuracy (e.g., from pixels of a 1080P HD frame to a 4K Ultra UD frame).



74.    The upscaling engine in the M65Q8-H1 corrects luminance data based on the sum of correction amounts calculated from the luminance data (e.g., by multiplying pixels).



75.    The foregoing features and capabilities of the M65Q8-H1, and Defendant's description and/or demonstration thereof, including in user manuals and advertising, reflect Defendant's direct infringement by satisfying every element of at least claim 1 of the '858 Patent, under 35 U.S.C. § 271(a).

76.    On information and belief, Defendant further infringes the '858 Patent

through additional products utilizing the same or reasonably similar functionalities as described above with respect to the M65Q8-H1 (collectively, "the '858 Accused Products"). The '858 Accused Products include, by way of examples, Vizio's P-Series Quantum X televisions including at least the P65QX-H1, P75QX-H1, and P85QX-H1; P-Series Quantum televisions including at least the P65Q9-H1 and P75Q9-H1; M-Series Quantum televisions including at least the M55Q7-H1, M50Q6-J01, M586x-H1, M55Q6-J01, M65Q6-J09, M65Q7-H1, M65Q8-H1, M55Q7-J01, M706x-H3, and M70Q6-J03; M-Series televisions including at least the M557-G0, and M506x-H9; V-Series televisions including at least the V435-J01, V505-J09, V555-J01, V655-J09, V705-J03, V755-H4, and V755-J04; D-Series televisions including at least the D32h-J09, D40f-J09, and D43f-J04; and OLED televisions including at least the OLED55-H1 and OLED65-H1. These additional products each include all necessary hardware and operating systems and work as described above with respect to the M65Q8-H1. Maxell reserves the right to discover and pursue any additional infringing devices that incorporate infringing functionalities. For the avoidance of doubt, the '858 Accused Products are identified to describe the Defendant's infringement and in no way limit the discovery and infringement allegations against Defendant concerning other devices that incorporate the same or reasonably similar functionalities.

77.     Defendant has indirectly infringed at least claim 1 of the '858 Patent in this judicial district and elsewhere in the United States by, among other things, actively inducing the use, offering for sale, selling, or importation of at least the '858 Accused Products. Defendant's customers who purchase devices and components thereof and operate such devices and components in accordance with Defendant's instructions directly infringe one or more claims of the '858 Patent in violation of 35 U.S.C. § 271. Defendant instructs its customers through at least user guides, such as those for the M65Q8-H1 located at the following website: https://www.vizio.com/content/dam/vizio/us/en/images/product/2020/tvs/m-series/

28

m55q8-h1/2020_M8-Series_M55Q8-H1_UM-ENG.pdf.  Defendant is thereby liable for infringement of the '858 Patent pursuant to 35 U.S.C. § 271(b).

78.    Defendant has indirectly infringed at least claim 1 of the '858 Patent, by, among other things, contributing to the direct infringement of others, including customers of the '858 Accused Products by making, offering to sell, or selling, in the United States, or importing a component of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of the '858 Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

79.    For example, the '858 Accused Products include processor hardware and/or software that is configured to enlarge video images using luminance data interpolation. These are components of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patented process. Furthermore, such components are a material part of the invention and upon information and belief are not a staple article or commodity of commerce suitable for substantial non-infringing use. Thus, Defendant is liable for infringement of the '858 Patent pursuant to 35 U.S.C. § 271(c).

80.    Defendant has been on notice of the '858 Patent since at least July 13, 2021. By the time of trial, Defendant will thus have known and intended (since receiving such notice), that its continued actions would actively induce and contribute to actual infringement of at least claim 1 of the '858 Patent.

81.    Defendant undertook and continued its infringing actions despite an objectively high likelihood that such activities infringed the '858 Patent, which has been duly issued by the USPTO, and is presumed valid. For example, since at least July 13, 2021, Defendant has been aware of an objectively high likelihood that its actions constituted and continue to constitute infringement of the '858 Patent, and that the '858 Patent is valid. On information and belief, Defendant could not

29

reasonably, subjectively believe that its actions do not constitute infringement of the '858 Patent, nor could they reasonably, subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, and based on Defendant's knowledge of the strength and value of Maxell's portfolio due to the prior licensing and negotiation history set forth in this complaint, Defendant willfully infringes the '858 Patent.

82.     Maxell has been damaged by Defendant's infringement of the '858 Patent.

## COUNT V – INFRINGEMENT OF U.S. PATENT NO. 8,107,007

83.     Maxell incorporates paragraphs 1-82 above by reference.

84.     U.S. Patent No. 8,107,007  (the "'007 Patent," attached hereto at Exhibit 5) duly issued on January 31, 2012 and is entitled *Image Processing Apparatus.*

85.     Maxell is the owner by assignment of the '007 Patent and possesses all rights under the '007 Patent, including the exclusive right to recover for past and future infringement.

86.     Defendant has directly infringed one or more claims of the '007 Patent in this judicial district and elsewhere in California, including at least claims 1, 10, and 12 literally and/or under the doctrine of equivalents, by or through making, using, importing, offering for sale and/or selling their televisions, including by way of example a product known as the M506x-H9.

87.     The M506x-H9 is a television with options to accept predetermined frame rate image signals from a variety of sources such as a DVD player or a cable, through an HDMI, Composite, Ethernet or Antenna ports.

1
2
3
4
5
6
7
8
9



10    88.    The M506x-H9 has an IQ Active Processor that acquires information

11  about the input image signal such as the source of the signal, resolution, content

12  type, and frame rate.  Further, on information and belief, the IQ Active Processor

13  has a frame rate converter for converting the frame rate of the input image signal by

14  processing the input image signal and adjusting the frame rate of the output signal

15  based on the content type.

16

17  # VIZIO IQ Active™ Processor.

18

19  Inside, the lightning-fast IQ Active™ processor delivers superior picture processing,

20  and more intelligent 4K upscaling engine displaying your favorite HD

    entertainment in spectacular 4K quality.

21

22   

23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16      89.    In addition, on information and belief, the IQ Active Processor detects

17   a motion amount in the input image signal. For example, the M506x-H9 uses "film

18   mode" functionality to detect the motion amount and content and to generate a

19   higher frame rate of the input image signal considering the detected motion amount

20   in the input image signal.

21
22
23
24
25
26
27
28

- • **V-Gaming Engine™:**
  - – **Game Low Latency:** Reduces video delay (lag) when gaming. When set to Auto and Automatic Low Latecy Mode (ALLM) is detected, ALLM will apply for the duration of the game.
  - – **Game HDR:** Optimizes picture quality for HDR game.
- • **Film Mode —** Optimizes the picture for watching films. Select **On** or **Off**.
- • **Gamma —** Set the shape of the Gamma curve. Use lower Gamma values for bright room conditions, and higher values when it's dark.
- • **Color Calibration —** Calibrate colors using HSB, gain, offset and 20 point white balance and test or reset colors to defaults.

32

1
2
3
4
5
6
7
8
9
10
11
12
13

 

14   90.    Further, on information and belief the frame rate converter in the

15   M506x-H9 converts the frame rate of an image signal corresponding to the program

16   on the basis of genre information. For example, the IQ Active processor conducts a

17   frame rate conversion of the input image signal corresponding to the program on

18   the basis of genre information using the "film mode" functionality.

19   91.    The foregoing features and capabilities of the M506x-H9, and

20   Defendant's description and/or demonstration thereof, including in user manuals

21   and advertising, reflect Defendant's direct infringement by satisfying every element

22   of at least claims 1, 10, and 12 of the '007 Patent, under 35 U.S.C. § 271(a).

23   92.    On information and belief, Defendant further infringes the '007 Patent

24   through additional products utilizing the same or reasonably similar functionalities

25   as described above with respect to the M506x-H9 (collectively, "the '007 Accused

26   Products"). The '007 Accused Products include, by way of examples, Vizio's M-

27   Series Quantum televisions including at least the M65Q6-J09,  M706x-H3, and

28   M70Q6-J03; M-Series televisions including at least the M557-G0, M80-D3, M70-

33

D3, M65-D0, M60-C3, and M55-D0; V-Series televisions including at least the V505-J09, V705-J03, V755-H4, V755-J04; E-Series televisions including at least the E70u-D3, E65u-D3, E60u-D3, E55-C2, E55u-D0, E55u-D2, E55-D0, E50u-D2, E48u-D0, E48-D0, E43u-D2, E43-D2, and E40-D0; and D-Series televisions including at least the D32h-J09, D40f-J09, D43f-J04, D70-D3, D65u-D2, D65-D2, D60-D3, D48-D0, D43-D2, D39h-D0, D39hn-D0, and D32hn-D0. These additional products each include all necessary hardware and operating systems and work as described above with respect to the M506x-H9. Maxell reserves the right to discover and pursue any additional infringing devices that incorporate infringing functionalities. For the avoidance of doubt, the '007 Accused Products are identified to describe the Defendant's infringement and in no way limit the discovery and infringement allegations against Defendant concerning other devices that incorporate the same or reasonably similar functionalities.

93.     Defendant has indirectly infringed at least claims 1, 10, and 12 of the '007 Patent in this judicial district and elsewhere in the United States by, among other things, actively inducing the use, offering for sale, selling, or importation of at least the '007 Accused Products. Defendant's customers who purchase devices and components thereof and operate such devices and components in accordance with Defendant's instructions directly infringe one or more claims of the '007 Patent in violation of 35 U.S.C. § 271. Defendant instructs its customers through at least user guides, such as those for the M506x-H9 located at the following website: http://cdn.vizio.com/misc/KBImages/models/m506xh9/2021_M506x-H9_M586x-H1_M706X-H3_UM-ENG.pdf. Defendant is thereby liable for infringement of the '007 Patent pursuant to 35 U.S.C. § 271(b).

94.     Defendant has indirectly infringed at least claims 1, 10, and 12 of the '007 Patent, by, among other things, contributing to the direct infringement of others, including customers of the '007 Accused Products by making, offering to sell, or selling, in the United States, or importing a component of a patented

34

machine, manufacture, or combination, or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of the '007 Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

95.     For example, the '007 Accused Products include an input unit to which an image signal is input, an information acquirer for acquiring information concerning the input image signal, a frame rate converter, and a display unit for displaying the image. These are components of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patented process. Furthermore, such components are a material part of the invention and upon information and belief are not a staple article or commodity of commerce suitable for substantial non-infringing use. Thus, Defendant is liable for infringement of the '007 Patent pursuant to 35 U.S.C. § 271(c).

96.     Defendant has been on notice of the '007 Patent since at the latest, November 8, 2019. By the time of trial, Defendant will thus have known and intended (since receiving such notice), that its continued actions would actively induce and contribute to actual infringement of at least claims 1, 10, and 12 of the '007 Patent.

97.     Defendant undertook and continued its infringing actions despite an objectively high likelihood that such activities infringed the '007 Patent, which has been duly issued by the USPTO, and is presumed valid. For example, since at least November 8, 2019, Defendant has been aware of an objectively high likelihood that its actions constituted and continue to constitute infringement of the '007 Patent, and that the '007 Patent is valid. On information and belief, Defendant could not reasonably, subjectively believe that its actions do not constitute infringement of the '007 Patent, nor could they reasonably, subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high

35

likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, and based on Defendant's knowledge of the strength and value of Maxell's portfolio due to the prior licensing and negotiation history set forth in this complaint, Defendant willfully infringes the '007 Patent.

98.     Maxell has been damaged by Defendant's infringement of the '007 Patent.

### COUNT VI – INFRINGEMENT OF U.S. PATENT NO. 7,730,507

99.     Maxell incorporates paragraphs 1-98 above by reference.

100.    U.S. Patent No. 7,730,507 (the "'507 Patent," attached hereto at Exhibit 6) duly issued on June 1, 2010 and is entitled *Broadcast Receiving Apparatus and Starting Method Thereof.*

101.    Maxell is the owner by assignment of the '507 Patent and possesses all rights under the '507 Patent, including the exclusive right to recover for past and future infringement.

102.    Defendant has directly infringed one or more claims of the '507 Patent in this judicial district and elsewhere in California, including at least claims 1, 2, 10, and 13 literally and/or under the doctrine of equivalents, by or through making, using, importing, offering for sale and/or selling their televisions, including by way of example a product known as the M557-G0.

103.    The Vizio M557-G0 is a smart television that can display programs received via digital broadcasting signal such as from, for example, a connected cable, satellite, or RF antenna.  The M557-G0 includes a main board, a timing controller (T-CON) board, and a power board, containing various circuitry and components, as shown below:

104.   The M557-G0 includes processors that perform instructions such as those performed by its central processing unit for example, and that are contained in the smart television software, also referred to as firmware. The M557-G0 includes audio/video decoder capabilities, such as those performed by its System on Chip (SoC) Sigma HiDTV Pro SX7 processor.

37



Sigma Designs will showcase its STV7701 processors at IFA Berlin Hall 2, Stand 124, September 4-9

Key capabilities supported on this leading edge platform include:

- Ultra HD (UHD) Single Chip for 60Hz Smart TV
- 4K Ultra HD (UHD) resolution with High Dynamic Range and Wide Color Gamut capabilities include HDR 10, SMPTE 2084 and 2086, Dolby Vision
- 512 Zones 2D Dimming
- HEVC (H.265) UHD 10 bit video decoding at 60fps,
- Google VP9 UHD decoding
- Trusted Execution Environment and ARM Trust Zone support for content protection
- Integrated UHD HDMI v2 receivers with HDCPv2.2 content protection
- Integrated Civolution NexGuard forensic UHD watermarking Technology to curb content piracy
- Support for Android and Linux operating systems, as well as pre-integrated software for TV middleware, DRM, HTML5 browser engine and other software packages to build TV sets or other display products

105.   The M557-G0 contains a first and second waiting mode, called Eco Mode and Quick Start Mode, that are standby power modes that enable the display to power on faster and also turn on when powered from another device, such as when casting onto the TV. The M557-G0 also contains the display, electric power source unit, and remote control signal receiving portion claimed by the '507 Patent, and operates such that the Eco Mode consumes less power than the Quick Start Mode, as no power is supplied to its second controller and decoder under the Eco Mode.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



### Adjusting the Power Mode

Your TV is set to Eco Mode by default. When the TV is powered off, the Eco Mode setting uses less than 0.5W of power. Quick Start Mode enables your display to power on faster and also to turn on when powered from another device (such as when you are casting onto the TV).

> ⚠️ **WARNING:** Please note that by changing this setting the energy consumption required to operate this device will change.

**To switch between Eco Mode and Quick Start Mode:**
Menu > System > Power Mode

Highlight either Eco Mode or Quick Start Mode and press **OK**.





106.   Under information and belief, processor(s) and/or component(s) of the M557-G0 control the power mode operations of the M557-G0, such as, for example, a processor or circuitry of the main board and T-CON controller for controlling the TV's waiting modes, and a processor or circuitry that is also configured to be started up by a predetermined OS to control a processing of a received digital broadcasting signal via a decoder. Actual operation of the Vizio M557-G0 shows that when the television is powered on, an OS bootstrap loading screen is shown when the television is configured in Eco Mode as the standby power mode but not when it is configured in Quick Start Mode as the standby power mode:

 

107.   The foregoing features and capabilities of the M557-G0, and Defendant's description and/or demonstration thereof, including in user manuals and advertising, reflect Defendant's direct infringement by satisfying every element of at least claims 1, 2, 10, and 13 of the '507 Patent, under 35 U.S.C. § 271(a).

108.   On information and belief, Defendant further infringes the '507 Patent through additional products utilizing the same or reasonably similar functionalities as described above with respect to the M557-G0 (collectively, "the '507 Accused Products"). The '507 Accused Products include, by way of examples, Vizio's M-Series Quantum televisions including at least the M65Q6-J09,  M706x-H3, and M70Q6-J03; M-Series televisions including at least the M506x-H9, M80-D3, M70-

D3, M65-D0, M60-C3, and M55-D0; V-Series televisions including at least the V505-J09, V705-J03, V755-H4, V755-J04; E-Series televisions including at least the E70u-D3, E65u-D3, E60u-D3, E55-C2, E55u-D0, E55u-D2, E55-D0, E50u-D2, E48u-D0, E48-D0, E43u-D2, E43-D2, and E40-D0; and the D-Series televisions including at least the D32h-J09, D40f-J09, D43f-J04, D70-D3, D65u-D2, D65-D2, D60-D3, D48-D0, D43-D2, D39h-D0, D39hn-D0, and D32hn-D0. These additional products each include all necessary hardware and operating systems and work as described above with respect to the M557-G0. Maxell reserves the right to discover and pursue any additional infringing devices that incorporate infringing functionalities. For the avoidance of doubt, the '507 Accused Products are identified to describe the Defendant's infringement and in no way limit the discovery and infringement allegations against Defendant concerning other devices that incorporate the same or reasonably similar functionalities.

109.   Defendant has indirectly infringed at least claims 1, 2, 10, and 13 of the '507 Patent in this judicial district and elsewhere in the United States by, among other things, actively inducing the use, offering for sale, selling, or importation of at least the '507 Accused Products. Defendant's customers who purchase devices and components thereof and operate such devices and components in accordance with Defendant's instructions directly infringe one or more claims of the '507 Patent in violation of 35 U.S.C. § 271. Defendant instructs its customers through at least user guides, such as those for the M557-G0 located at the following website: https://cdn.vizio.com/user-manual/PDF/2019/TV/UM/M557-G0_M657-G0_UM-ENG.pdf. Defendant is thereby liable for infringement of the '507 Patent pursuant to 35 U.S.C. § 271(b).

110.   Defendant has indirectly infringed least claims 1, 2, 10, and 13 of the '507 Patent, by, among other things, contributing to the direct infringement of others, including customers of the '507 Accused Products by making, offering to sell, or selling, in the United States, or importing a component of a patented

machine, manufacture, or combination, or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of the '507 Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

111.   For example, the '507 Accused Products include a remote sensor configured to receive a remote control signal for operating the display, and a processor with software for controlling a processing of a received digital broadcasting signal via a decoder. These are components of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patented process. Furthermore, such components are a material part of the invention and upon information and belief are not a staple article or commodity of commerce suitable for substantial non-infringing use. Thus, Defendant is liable for infringement of the '507 Patent pursuant to 35 U.S.C. § 271(c).

112.   Defendant has been on notice of the '507 Patent since at least July 13, 2021. By the time of trial, Defendant will thus have known and intended (since receiving such notice), that its continued actions would actively induce and contribute to actual infringement of at least claims 1, 2, 10, and 13 of the '507 Patent.

113.   Defendant undertook and continues its infringing actions despite an objectively high likelihood that such activities infringed the '507 Patent, which has been duly issued by the USPTO, and is presumed valid. For example, since at least July 13, 2021, Defendant has been aware of an objectively high likelihood that its actions constituted and continue to constitute infringement of the '507 Patent, and that the '507 Patent is valid. On information and belief, Defendant could not reasonably, subjectively believe that its actions do not constitute infringement of the '507 Patent, nor could they reasonably, subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high

43

likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, and based on Defendant's knowledge of the strength and value of Maxell's portfolio due to the prior licensing and negotiation history set forth in this complaint, Defendant willfully infringes the '507 Patent.

114.   Maxell has been damaged by Defendant's infringement of the '507 Patent.

## COUNT VII – INFRINGEMENT OF U.S. PATENT NO. 7,760,213

115.   Maxell incorporates paragraphs 1-114 above by reference.

116.   U.S. Patent No. 7,760,213 (the "'213 Patent," attached hereto at Exhibit 7) duly issued on July 20, 2010 and is entitled *Contrast Adjusting Circuitry And Video Display Apparatus Using Same*.

117.   Maxell is the owner by assignment of the '213 Patent and possesses all rights under the '213 Patent, including the exclusive right to recover for past and future infringement.

118.   Defendant has directly infringed one or more claims of the '213 Patent in this judicial district and elsewhere in California, including at least claim 1 literally and/or under the doctrine of equivalents, by or through making, using, importing, offering for sale and/or selling their televisions, including by way of example a product known as the M506x-H9.

119.   The M506x-H9 is a television that displays a video image based on a video signal using a fixed-pixel type device. The M506x-H9 is equipped with a contrast adjusting circuitry that includes a controller (e.g., IQ Active Processor) and the "Local Contrast" and High Dynamic Range (HDR) (e.g., HDR10 and Dolby Vision) functionalities to automatically adjust the contrast of the video image based on different luminance levels. Further, the IQ Active Processor has a "Black Detail" functionality that performs the black level processing and adjusts the average brightness of the picture (e.g., to compensate for large areas of brightness) and that decreases an output luminance level corresponding to an input luminance level.

44

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Adjusting Advanced Picture Settings**

**To adjust advanced picture settings:**

**Menu > Picture > Advanced Picture**

Use the **Navigation** buttons to highlight the setting you wish to adjust, then press the **Left/Right Navigation** buttons to change the setting:

- **Black Detail —** Adjusts the average brightness of the picture to compensate for large areas of brightness.

- **Super Resolution —** Configures the resolution to enhance dim and blurred pictures resulting in a sharper image.

- **Edge Enhancement —** Increases the smoothness of edges.

- **Local Contrast —** Adjust the contrast of the picture locally.

- **Backlight Control —** Dynamically improves the constrast ratio of the picture by adjusting the backlight.

| Advanced Picture | |
|---|---|
| Black Detail | Off |
| Super Resolution | Medium |
| Edge Enhancement | Low |
| Local Contrast | Low |
| Backlight Control | Off |
| Reduce Noise | |
| V-Gaming Engine™ | |
| Film Mode | On |
| Gamma | 2.1 - Normal |
| Color Calibration | Off |

45

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Tech Specs**

## Key Specs

| | |
|---|---|
| Class Size | 50" |
| Screen Size (Diag) | 49.50" (1257.30mm) |
| Backlight Type | Full Array LED |
| Resolution | 3840 x 2160 |
| UHD Upscale Engine | Spatial Scaling Engine |
| UHD Codec Support | VP9 and HEVC (H.265) |
| Smart Platform | VIZIO SmartCast™ |
| Free Streaming Channels | Yes |
| Refresh Rate | |
| High Dynamic Range | Dolby Vision, HDR10+, HDR10, HLG |
| Wide Color Gamut | Quantum Color |
| Local Dimming Zones | |
| Display Processor | IQ Active™ |



46

1
2
3
4
5
6
7
8
9
10
11
12



13      120.   The foregoing features and capabilities of the M506x-H9, and

14  Defendant's description and/or demonstration thereof, including in user manuals

15  and advertising, reflect Defendant's direct infringement by satisfying every element

16  of at least claim 1 of the '213 Patent, under 35 U.S.C. § 271(a).

17      121.   On information and belief, Defendant further infringes the '213 Patent

18  through additional products utilizing the same or reasonably similar functionalities

19  as described above with respect to the M506x-H9 (collectively, "the '213 Accused

20  Products"). The '213 Accused Products include, by way of examples, Vizio's M-

21  Series Quantum televisions including at least the M65Q6-J09,  M706x-H3, and

22  M70Q6-J03; M-Series televisions including at least the M557-G0, M80-D3, M70-

23  D3, M65-D0, M60-C3, and M55-D0; V-Series televisions including at least the

24  V505-J09, V705-J03, V755-H4, V755-J04; E-Series televisions including at least

25  the E70u-D3, E65u-D3, E60u-D3, E55-C2, E55u-D0, E55u-D2, E55-D0, E50u-D2,

26  E48u-D0, E48-D0, E43u-D2, E43-D2, and E40-D0; and D-Series televisions

27  including at least the D32h-J09, D40f-J09, D43f-J04, D70-D3, D65u-D2, D65-D2,

28  D60-D3, D48-D0, D43-D2, D39h-D0, D39hn-D0, and D32hn-D0. These additional

products each include all necessary hardware and operating systems and work as described above with respect to the M506x-H9. Maxell reserves the right to discover and pursue any additional infringing devices that incorporate infringing functionalities. For the avoidance of doubt, the '213 Accused Products are identified to describe the Defendant's infringement and in no way limit the discovery and infringement allegations against Defendant concerning other devices that incorporate the same or reasonably similar functionalities.

122.   Defendant has indirectly infringed at least claim 1 of the '213 Patent in this judicial district and elsewhere in the United States by, among other things, actively inducing the use, offering for sale, selling, or importation of at least the '213 Accused Products. Defendant's customers who purchase devices and components thereof and operate such devices and components in accordance with Defendant's instructions directly infringe one or more claims of the '213 Patent in violation of 35 U.S.C. § 271. Defendant instructs its customers through at least user guides, such as those for the M506x-H9 located at the following website: http://cdn.vizio.com/misc/KBImages/models/m506xh9/2021_M506x-H9_M586x-H1_M706X-H3_UM-ENG.pdf. Defendant is thereby liable for infringement of the '213 Patent pursuant to 35 U.S.C. § 271(b).

123.   Defendant has indirectly infringed at least claim 1 of the '213 Patent, by, among other things, contributing to the direct infringement of others, including customers of the '213 Accused Products by making, offering to sell, or selling, in the United States, or importing a component of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of the '213 Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

124.   For example, the '213 Accused Products include Black Detail, HDR, and Local Contrast functionalities to dynamically control the contrast of video

images. These are components of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patented process. Furthermore, such components are a material part of the invention and upon information and belief are not a staple article or commodity of commerce suitable for substantial non-infringing use. Thus, Defendant is liable for infringement of the '213 Patent pursuant to 35 U.S.C. § 271(c).

125.   Defendant has been on notice of the '213 Patent since at the latest, November 8, 2019. By the time of trial, Defendant will thus have known and intended (since receiving such notice), that its continued actions would actively induce and contribute to actual infringement of at least claim 1 of the '213 Patent.

126.   Defendant undertook and continued its infringing actions despite an objectively high likelihood that such activities infringed the '213 Patent, which has been duly issued by the USPTO, and is presumed valid. For example, since at least November 8, 2019, Defendant has been aware of an objectively high likelihood that their actions constituted and continue to constitute infringement of the '213 Patent, and that the '213 Patent is valid. On information and belief, Defendant could not reasonably, subjectively believe that its actions do not constitute infringement of the '213 Patent, nor could they reasonably, subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued their infringing activities. As such, and based on Defendant's knowledge of the strength and value of Maxell's portfolio due to the prior licensing and negotiation history set forth in this complaint, Defendant willfully infringe the '213 Patent.

127.   Maxell has been damaged by Defendant's infringement of the '213 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Maxell prays for relief as follows:

1.      A judgment declaring that VIZIO has infringed and is infringing one or

more claims of the '893, '369, '206, '858, '007, '507, and '213 Patents;

2.      A judgment awarding Maxell compensatory damages as a result of VIZIO's infringement of one or more claims of the '893, '369, '206, '858, '007, '507, and '213 Patents, together with interest and costs, consistent with lost profits and in no event less than a reasonable royalty;

3.      A judgment awarding Maxell treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of VIZIO's willful and deliberate infringement of one or more claims of the '893, '369, '206, '858, '007,  '507, and '213 Patents;

4.      A judgment declaring that this case is exceptional and awarding Maxell its expenses, costs, and attorneys' fees in accordance with 35 U.S.C. §§ 284 and 285 and Rule 54(d) of the Federal Rules of Civil Procedure;

5.      A grant of permanent injunctions enjoining VIZIO from further acts of infringement of one or more claims of the '893, '369, '206, '858, '007, '507, and '213 Patents; and

6.      Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Maxell hereby demands a trial by jury.


Dated:  August 20, 2021                    Respectfully submitted,

                                           MAYER BROWN LLP

                                    By:   */s/ Kfir B. Levy*
                                           Kfir B. Levy (State Bar No. 235372)
                                           1999 K Street, NW
                                           Washington, DC 20006
                                           Telephone: (202) 263-3000
                                           Facsimile: (202) 263-3300
                                           klevy@mayerbrown.com

                                           Dale J. Giali (State Bar No. 150382)
                                           350 South Grand Avenue, 25th Floor
                                           Los Angeles, CA 90071-1503
                                           Telephone: (213) 229-9500
                                           Facsimile: (213) 625-0248
                                           dgiali@mayerbrown.com

50

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____

Attorneys for Plaintiffs
Maxell, Ltd. and Maxell Holdings,
Ltd.

51